PAULINE NEWMAN, Circuit Judge,
dissenting.
Respectfully, I dissent. This case is not distinguishable from the definitive decision of United States v. Winstar Corp., 518 U.S. 839, 116 S.Ct. 2432, 135 L.Ed.2d 964 (1996), wherein the government agreed to a specified accounting method, including accounting for supervisory goodwill as regulatory capital with long-term amortization, in order to induce a cash investment that was adequate to meet the then-existing regulatory requirements. The documented mutual promises and forbearances that here occurred track those of Winstar.
The private investors who are the plaintiffs here, like the private investor in Winstar, agreed to contribute and did contribute capital to a failing thrift, upon written commitments from the Bank Board including federal approval of the terms of the investment and conditions of the transaction. The written commitments from the Bank Board to the plaintiff herein included authorization to continue accounting for “deferred loan losses” as regulatory capital with long-term amortization. As in Winstar, the documents establishing the agreement between the investors and the government comprise several exchanges of correspondence and governmental approval documents, together forming an integrated contract. That contract was breached when, after enactment of FIR-REA, the government withdrew its authorization for the accounting practices to which it had agreed, forcing the bank into receivership.
Implementing their agreement with the government, the investors in both Winstar and the case at bar became the owners of the thrift. The many and varied arrangements whereby the government in the 1980s obtained hard money from investors in exchange for favorable accounting procedures and forbearances, did not depend on whether the investors were individuals or a corporation; it was irrelevant whether the investor was another bank that acquired the shares of the troubled thrift, or individuals who acquired the shares of the troubled thrift. What counted was wheth *1318 er there was an agreement by the government in consideration of the capital contributed by the investor, and whether that agreement was breached. That is the principle established in Winstar.
As in Winstar, these investors contracted with the government, coming to terms before they made their capital contributions. It is surely incorrect to dismiss this case at the threshold, under Rule 12(b)(1) and by summary judgment, without providing an opportunity for the investors to establish the existence of a contract, in view of the extensive documentary evidence supporting mutual intent, reliance, and performance. The record contains, for example, the “lawyer’s letter” setting forth the details of the arrangement; at least two letters from the Federal Home Loan Bank Board to the investors confirming the arrangement; the Federal Home Loan Bank of Atlanta Memorandum stating that certain conditions would be unacceptable to the “four individuals” who would acquire control; the Federal Home Loan Bank Board letter to the individual investors summarizing and recommending approval of the arrangement; the Plan of Conversion stating the requirement that the investors would provide capital; and the Dividend Agreement that was a condition of Bank Board approval. The decision of the Court of Federal Claims that these documents did not and could not comprise an integrated contract to which these plaintiffs are party, is not in accordance with the rules of contract or with precedent. From my colleagues’ affir-mance of that decision I must, respectfully, dissent.